NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8644
     Facsimile: (213) 894-0141
     E-mail:    Matthew.O'Brien@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
2019 FEB -7 AM 10:20
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19 CR 00067 - VAP |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT JIN SU PARK |
| v. | |
| JIN SU PARK, aka "Jay Oh," | |
| Defendant. | |

1.    This constitutes the plea agreement between JIN SU PARK, also known as "Jay Oh" ("defendant"), and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

     a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One and Two in the three-

count information in this matter, in the form attached to this agreement as Exhibit A or a substantially similar form, which charge defendant with (1) importing merchandise contrary to law, in violation of 18 U.S.C. §§ 545, 2(b) (Count One); and (2) introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, 333(a)(2) (Count Two).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Make restitution, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

i.   Agree to be jointly and severally liable for paying any fines that the Court orders for co-defendant RNG GLOBAL MANAGEMENT AND TRADING GROUP INC.

2

3.   Defendant further agrees:

a.   Truthfully to disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items, specifically including all right, title, and interest in and to all United States currency, property and assets.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to these assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these properties pursuant to 18 U.S.C. § 981.  With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment.  Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any failure by the Court

3

to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

f.   Not to claim that reasonable cause to seize the assets was lacking.

g.   To cooperate fully with the USAO in all future civil, administrative, or ancillary proceedings arising out of this case relating to the forfeiture of assets.

h.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

i.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

j.   That forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

THE USAO'S OBLIGATIONS

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining count of the information as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable

Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   With respect to counts One and Two, not seek a sentence of imprisonment above the high end of, and make no recommendation as to the point within, the applicable Sentencing Guidelines range at which a term of imprisonment should be selected, provided that the offense level used by the Court to determine that range is 17 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the high end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## NATURE OF THE OFFENSES

5.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, importing merchandise contrary to law in violation of Title 18, United States Code, Sections 545 and 2(b), the following must be true:  defendant knowingly or fraudulently imported and brought, or willfully caused to be imported and brought, merchandise into the United States contrary to 21 U.S.C. §§ 331(a), 352.

6.   Defendant understands that for defendant to be guilty of the crime charged in Count Two, that is, introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352,

333(a)(2), the following must be true:  (1) defendant distributed, or willfully caused the distribution of, a drug in interstate commerce; (2) the drug was misbranded insofar as its labeling was false or misleading in any particular; and (3) defendant acted with the intent to defraud or mislead.

                         PENALTIES AND RESTITUTION

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 545 and 2(b), is:  20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 331(a), 352, 333(a)(2), is:  3 years imprisonment; a 5-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 23 years imprisonment; a 5-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

10.    Defendant understands and agrees that the Court:  (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the counts of conviction and any relevant conduct;

and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

11.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that the victims in this case include Eli Lilly and Company, which claims millions of dollars in losses from the illegal distribution of misbranded male sexual enhancement pills containing undisclosed Tadalafil. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result:   (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.

12.   The Court will also order forfeiture of the property listed in the Forfeiture Allegations of the information pursuant to 18 U.S.C. § 982 or substitute assets up to the value of that property.

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part

of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.    Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to:  removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

FACTUAL BASIS

16.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.   Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

A.   Defendant's Copycat Scheme

Defendant was a longtime friend of J.L., who owned and operated several companies that manufactured and distributed misbranded male sexual enhancement pills across the United States.   Beginning no later than 2015, defendant began providing minor assistance to J.L.'s pill business.   In February 2017, federal agents executed a search warrant at J.L.'s pill business as part of an investigation by the Department of Homeland Security ("DHS") and the Food and Drug Administration ("FDA") into J.L.'s smuggling of Tadalafil (an active pharmaceutical ingredient in male sexual enhancement pills) from China.   J.L.'s pill business immediately shut down its operations.

Shortly after the execution of the search warrant, J.L. told defendant about the federal investigation.   Defendant knew that J.L. had been unlawfully selling misbranded pills containing Tadalafil and other active pharmaceutical ingredients smuggled from China.

Defendant helped J.L. clean out his business after the execution of the search warrant.   Defendant took approximately 14,000 male sexual enhancement pills from J.L.'s business, all of which contained

9

undisclosed Tadalafil, as defendant knew.  Defendant stored the misbranded pills at defendant's house.  Defendant also took a thumbdrive from J.L.'s business, which he kept for himself.  The thumbdrive contained a range of information about J.L.'s pill business, including customer lists, pricing information, and smuggling contacts in China.

Defendant decided to set up a new company, RNG GLOBAL MANAGEMENT AND TRADING GROUP INC. ("RNG"), to replace J.L.'s pill business. Despite knowing that J.L.'s business was the target of a widespread criminal investigation by DHS and the FDA, defendant decided to copy J.L.'s business model in almost every respect:  defendant also would sell misbranded pills containing Tadalafil without disclosing the pills true ingredients to consumers.  Defendant would use the same Chinese suppliers as J.L. used and sell his copycat pills to J.L.'s distributors.

Defendant was the organizer, leader, manager, and supervisor of the criminal scheme described herein.

B.    Defendant's Smuggling of Dapoxetine from China

In early September 2017, defendant reached out to "Selina," one of the suppliers in China that J.L. had used to smuggle Tadalafil. Defendant asked Selina to send him pricing information on Tadalafil, Sildenafil, and Dapoxetine.  In late 2017 and early 2018, defendant and Selina negotiated the best way for defendant to send Selina money for the active pharmaceutical ingredients without alerting law enforcement.  Eventually, in April 2018, defendant ordered five kilograms of Dapoxetine for a price of $6,250, and five kilograms of Rhodiola rosea ("RH," a plant extract used in male sexual enhancement pills) for a price of $1,000.  Defendant intended to use the

Dapoxetine and RH as ingredients in his male sexual enhancement pills.  On or about May 4, 2018, defendant transferred $7,250 to a Chinese bank account that Selina had specified.

Pursuant to defendant's instructions, on or about May 14, 2018, Selina shipped a parcel containing approximately five kilograms of Dapoxetine to a Korean intermediary whom defendant was using (as J.L. had done) due to defendant's belief that shipments to the United States from Korea would receive less scrutiny from Customs officials than shipments incoming from China.  As defendant was aware, in order to avoid scrutiny from law enforcement, the parcel was mislabeled because it contained a packing slip stating, fraudulently, that the parcel contained "Glass Colour Sample (Zinc Sulfide)," rather than listing the parcel's true contents, Dapoxetine, which was contraband. The parcel's label did not contain accurate statements of its contents in terms of weight, measure, and numerical count, and did not bear adequate directions for use of the Dapoxetine.  Pursuant to defendant's instructions, defendant's intermediary in Korea then forwarded the package to a commercial mailbox that defendant controlled in Grandville, Michigan, where it arrived on or about May 22, 2018 after passing through Customs.  As defendant was aware, had the parcel's contents been labelled correctly (as Dapoxetine), the United States would not have permitted the parcel to enter the country.

Defendant planned to have the parcel forwarded from Michigan to him in Los Angeles, but he was interviewed by DHS and FDA agents on May 24, 2018.  Following the interview, he agreed to have the package forwarded to a DHS agent in Los Angeles.  But for the interview,

defendant would have received the parcel in Los Angeles in late May 2018.

Pursuant to defendant's instructions, Selina sent a second parcel, containing approximately five kilograms of RH, to defendant using the same Korean intermediary.  The second parcel arrived at defendant's commercial mailbox in Grandville, Michigan on or about June 4, 2018.  It also had a packing slip that stated, falsely, that the parcel contained "Glass Colour (Zinc Sulfide) Sample."

C.    Defendant's Labelling of the Pills

After defendant took the 14,000 pills from J.L.'s business in February 2017, he decided to repackage them under a new brand name, "EEZZY UP PLATINUM" ("EEZZY UP"), and he established a new company, RNG, to market and distribute the EEZZY UP pills.  Defendant rented an office space in Pico Rivera, California, to conduct RNG's operations.  RNG had no employees or staff (other than defendant).  Defendant hired a printing company (the same company that J.L. had used) to print packaging materials for EEZZY UP.

The EEZZY UP packaging contained language that was nearly identical to the language on the packaging for J.L.'s pills.  The packaging did not disclose the presence of Tadalafil (or Dapoxetine).  The labels stated "no prescription necessary."  The ingredients were listed as a "proprietary blend" of 15 specified herbal ingredients.  They also stated "100% Natural Formula."  There was a "Caution" warning that stated "[c]onsult with your physician before using this product if you have heart problems, diabetes, or high blood pressure."  The labels noted that their statements had "not been evaluated by the Food and Drug Administration."  The labels did not disclose RNG's name or contact information.

12

D.    Defendant's Sales to His Distributors

Defendant used J.L.'s customer lists to reach out to many of J.L.'s customers and offer them EEZZY UP pills for purchase. Defendant's interstate sales of EEZZY UP pills included the following sales:

| DATE | AMOUNT OF PILLS | WHOLESALE PRICE | RECIPIENT'S LOCATION |
|---|---|---|---|
| 10/30/2017 | 600 | $1,680 | Coconut Creek, Florida |
| 11/8/2017 | 1,800 | $5,040 | Claymont, Delaware |
| 11/2/2017 | 600 | $1,680 | Dallas, Texas |
| 11/24/2017 | 600 | $1,680 | Coconut Creek, Florida |
| 12/1/2017 | 1,800 | $5,040 | Claymont, Delaware |
| 12/13/2017 | 600 | $1,680 | Austin, Texas |
| 12/19/2017 | 1,800 | $5,040 | Claymont, Delaware |
| 12/21/2017 | 600 | $1,680 | Coconut Creek, Florida |
| 1/10/2018 | 600 | $1,680 | Dallas, Texas |
| 1/16/2018 | 1,200 | $3,360 | Claymont, Delaware |
| 1/24/2018 | 1,200 | $3,360 | Austin, Texas |
| 2/20/2018 | 600 | $1,680 | Austin, Texas |
| 3/29/2018 | 600 | $1,680 | Austin, Texas |
| 4/6/2018 | 600 | $1,680 | Austin, Texas |
| 4/13/2018 | 600 | $1,680 | Austin, Texas |
| 4/16/2018 | 1,200 | $3,360 | Claymont, Delaware |
| 4/18/2018 | 600 | $1,680 | Dallas, Texas |
| 4/27/2018 | 600 | $1,680 | Austin, Texas |
| 5/14/2018 | 1,800 | $5,040 | Claymont, Delaware |
| 5/25/2018 | 600 | $1,680 | Dallas, Texas |

All of the EEZZY UP pills that defendant sold contained Tadalafil. All of the EEZZY UP pills were misbranded because (1) their labeling falsely and misleadingly stated "no prescription necessary," even though they were prescription drugs that contained Tadalafil; and (2) none of the labeling disclosed the presence of Tadalafil in the drugs.

From October 30, 2017 to June 5, 2018, defendant's intrastate and interstate sales of EEZZY UP pills totaled approximately $65,520.

13

Hundreds of individuals around the United States consumed defendant's misbranded pills; almost all of these individuals were victims of defendant's scheme because they consumed pills that were misbranded. Defendant was aware of the risk that his misbranded pills posed to consumers.

Defendant deposited some of his customers' checks at a MoneyGram store in Los Angeles (the same location where J.L. deposited his customers' checks) rather than in his bank account, so that the payments would not be traceable income. Defendant paid his associate R.N.G. (who had helped defendant form RNG) approximately $5,000 for his help.

E.    Defendant's Destruction of Evidence

Law enforcement agents initially interviewed defendant on Friday, May 18, 2018. As a result of the interview, defendant was aware of the ongoing investigation by DHS and the FDA into the nationwide distribution of misbranded pills, including defendant's role in J.L.'s scheme.

Defendant became scared as a result of the interview on May 18, 2018. The next day, he started to purge RNG's office of evidence. In order to destroy business records and tangible objects relating to the ongoing investigation by DHS and the FDA, defendant made approximately five trips to the Kay-Met Recycling Center ("Kay-Met") in Rowland Heights on May 19, 2018. He took 12 cases of EEZZY UP pills there to be destroyed, and allegedly sold his business computer to a Kay-Met employee for $200. Defendant's computer contained numerous documents relating to his smuggling activity as well as his sales of misbranded pills. When agents went to Kay-Met on May 24, 2018, they found the EEZZY UP packaging. However, the agents never

14

were able to locate the EEZZY UP pills that had been inside the packaging, and they could not track down defendant's computer. The EEZZY UP pills and defendant's business computer remain unrecovered.

<u>SENTENCING FACTORS</u>

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

//
//
//
//
//
//
//
//
//
//
//
//

18.    Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. §§ 2B1.1(a)(2), 2N2.1(a)] |
| Specific Offense Characteristics: | | |
| Loss/gain: | +6 | [U.S.S.G. § 2B1.1(b)(1)(D), cmt. 3(B), 3(F)(v)] |
| 10 or more victims | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)] |
| Enhancements: | | |
| Organizer: | +2 | [U.S.S.G. § 3B1.1(c)] |
| Obstruction: | +2 | [U.S.S.G. § 3C1.1] |
| Grouping: | +2 | [U.S.S.G. § 3D1.4] |
| Acceptance of Responsibility | −3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 17 | |

The parties stipulate and agree that the offenses to which defendant is pleading guilty comprise two distinct groups under U.S.S.G. § 3D1.2:

- Group One comprises the introduction of misbranded drugs into interstate commerce with the intent to defraud of mislead, in violation of 21 U.S.C. §§ 331(a), 333(a)(2) (Count Two), whose offense level is calculated above.  The total offense level for Group One is 15 (prior to any enhancement for grouping).

- Group Two comprises the smuggling offense (Count One), whose offense level, pursuant to U.S.S.G. § 2T3.1(c), is calculated pursuant to U.S.S.G. § 2N2.1 because the smuggled Dapoxetine that defendant received was contraband, and hence the offense

16

level mirrors the offense level of 15 calculated for Group One.

The parties stipulate and agree that, pursuant to U.S.S.G. § 3D1.4, Group One comprises one unit and Group Two comprises one unit. A 2-level increase in the overall offense level is therefore warranted under U.S.S.G. § 3D1.4.

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 4(d) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below. Subject to paragraph 31 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17

20.  Defendant reserves the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel – and if necessary have the court appoint counsel – at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

18

WAIVER OF VENUE

22.    Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offenses to which defendant is pleading guilty, to the extent the offenses to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offenses to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offenses to which defendant is pleading guilty.

WAIVER OF APPEAL OF CONVICTION

23.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.    Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24.    Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 23 years, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the

19

Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court:  the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25.    The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 24 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

26.    Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing

20

commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

21

b.    The USAO will be relieved of all its obligations under this agreement; in particular, the USAO:  (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to criminally prosecute pursuant to this agreement.

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

29.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

30.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not

accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

23

## NO ADDITIONAL AGREEMENTS

33. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____    2-5-19
MATTHEW W. O'BRIEN                    Date
Assistant United States Attorney

_____    01-15-2019
JIN SU PARK                          Date
Defendant

_____    1/15/2019
YOHAN LEE                            Date
Attorney for Defendant JIN SU PARK

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. In addition, this agreement has been read to me in Korean, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with

24

my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          01- 15 -2019
JIN SU PARK                               Date
Defendant


CERTIFICATION OF INTERPRETER

    I, _____, am fluent in the written and spoken English and Korean languages.  I accurately translated this entire agreement from English into Korean to defendant JIN SU PARK on this date.


_____          _____
INTERPRETER                               Date

25

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am JIN SU PARK's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

1/15/2019

_____
YOHAN LEE                          Date
Attorney for Defendant JIN SU PARK

26